[No. E043805. Fourth Dist., Div. Two. Aug. 29, 2008.]

In re JONATHAN T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN T., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part 2. of the Discussion.

476

COUNSEL

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Kristine A. Gutierrez and Elizabeth S. Voorhies, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McKINSTER, J.—Minor admitted one count of home invasion robbery. (Pen. Code, § 211.)[1] The juvenile court committed minor to the Division of Juvenile Justice (DJJ) for a maximum confinement time of nine years. Minor contends the juvenile court erred by (1) setting minor's maximum confinement time at nine years, rather than six years; (2) denying minor's request for a 90-day diagnostic evaluation at DJJ; and (3) committing minor to DJJ. We affirm the juvenile court's disposition as modified in this opinion.

## FACTS

At the time of the offense, minor was 14 years old and resided in the city of San Bernardino.

On March 26, 2007, at approximately 12:45 p.m.,[2] the victim awoke to a loud bang on his front door. The victim went to his front door, looked outside, and saw two males jumping over a fence into his backyard. The victim then saw two additional people exiting his laundry room. The victim told the four people to leave his property. One of the intruders, identified as "Camel," "pulled out a black, semiautomatic pistol and pointed it in the victim's face and told him to 'Shut the fuck up.' " The victim was scared and asked the intruder not to shoot him.

All four intruders pushed the victim toward a sliding door. A second intruder, Brian, punched the victim's face. Minor struck the victim's head and face multiple times. All four intruders then forced their way into the victim's home. Camel then struck the back of the victim's head twice with the

---

[1] All further references to code sections will be to the Penal Code unless otherwise noted.

[2] The probation report, from which these facts were taken, does not indicate whether the crime took place at 12:45 a.m. or p.m.; however, due to the use of military time elsewhere in the report, we infer that "1245" refers to 12:45 p.m.

handgun. The fourth intruder, Danielle, said, "Let's tie up this fool." The victim recognized Danielle as a person who had spent several nights at the victim's house with the victim's daughter, and who had been arrested with the victim's daughter on a prior occasion. The victim was tied to a chair in the middle of his living room with shoelaces, a belt, and a cord. The intruders ransacked the victim's house, and Danielle took a bag of what appeared to be clothes and compact discs.

After approximately 20 or 30 minutes, all four intruders entered the living room. One intruder asked for the victim's car keys. The victim informed the intruders that his car had mechanical problems, but later the victim heard his vehicle being started and the intruders leaving. The victim struggled to untie himself, and went to a neighbor's house to call 911.

Several hours later, the victim's wife informed police that she saw Danielle with two males walking on a city street. Detectives arrested three of the intruders, including minor. Minor admitted that he pushed the victim into the house. Minor admitted striking the victim's head. Minor stated that the gun was a BB gun and that he had thrown it away. Minor admitted that he and Brian had tied the victim to the chair. Minor admitted taking a sports drink, "some change and a few $1.00 coins" from the victim's house. Minor stated that a jewelry box was also taken from the victim's house, and that Danielle "used a bag to carry property out of the residence." All of the stolen property was later recovered in a vehicle parked in the front yard of Brian's home.

The victim, who is diabetic, experienced extremely high blood sugar immediately following the incident and was hospitalized for approximately 11 days, due to his right toe becoming swollen and infected. The victim was placed on intravenous antibiotics for six weeks to prevent him from losing his toe.

## DISCUSSION

## 1.

## MAXIMUM CONFINEMENT TIME

### A.   Contentions

Minor argues his maximum confinement time should be six years, rather than nine years, because it was not alleged, and he did not admit, that the robbery was committed in concert. The People contend (1) the fact of whether the robbery took place in concert is a sentencing factor that does not

need to be pled; and (2) minor was on notice that he was pleading to an in-concert first degree robbery, because the petition listed the maximum confinement time as nine years. We agree with minor's argument.

## B.   Legal and Factual Background

■   The maximum confinement time for a first degree robbery that was not committed in concert is six years. (§ 213, subd. (a)(1)(B).) The maximum confinement time for a first degree robbery committed in concert is nine years. (§ 213, subd. (a)(1)(A).)

In the petition filed against minor, it was alleged that "[o]n or about March 26, 2007, in [San Bernardino County], the crime of HOME INVASION ROBBERY, in violation of PENAL CODE Section 211, a FELONY, was committed by [minor], who did unlawfully and by means of force and fear take personal property from the person, possession and immediate presence of [the victim] and said offense was perpetrated in an inhabited dwelling house, trailer coach [or] inhabited portion of a building. If an adult is convicted of this offense the possible punishment would be 3-6-9."

## C.   Sentencing Factor

We begin by addressing the People's first contention—that acting in concert is a sentencing factor, which does not need to be alleged in the petition. For reference, we set forth the language of section 213, subdivision (a)(1): "Robbery of the first degree is punishable as follows:

"(A) If the defendant, voluntarily acting in concert with two or more other persons, commits the robbery within an inhabited dwelling house, . . . by imprisonment in the state prison for three, six, or nine years.

"(B) In all cases other than that specified in subparagraph (A), by imprisonment in the state prison for three, four, or six years."

At the outset, we note that the People provide no argument in support of their conclusion that acting in concert is a sentencing factor that does not need to be pled; however, at the end of their conclusion, the People provide

one citation to a case that quotes the 1986 legislative history of section 213.[3] The statutory language regarding robberies occurring in concert was added to section 213 in 1994. (Stats. 1994, ch. 789, § 1, p. 3909.) Accordingly, we do not examine the 1986 legislative history.

▮ Nonetheless, we construe the People's argument as asserting that the in-concert factor set forth in section 213, subdivision (a)(1)(A), is a sentencing factor as provided for in California Rules of Court, rule 4.421(c), which includes as aggravating sentencing factors "[a]ny other factors statutorily declared to be circumstances in aggravation." We further construe the People's argument as contending that the nine-year maximum confinement time for a robbery in concert is akin to an upper term sentence, and therefore would not need to be pled and proven beyond a reasonable doubt in juvenile court. (See *In re Christian G.* (2007) 153 Cal.App.4th 708, 715 [63 Cal.Rptr.3d 215] [the aggravating and mitigating circumstances sentencing scheme applicable to adult offenders is not applicable in juvenile courts].)

In order to determine whether or not, in juvenile court, the prosecution is required to allege that a robbery took place in concert, we must determine whether section 213, subdivision (a)(1)(A), operates as a sentencing factor, a sentence enhancement, or a separate offense. It is unclear from the face of the statute how the Legislature intended for it to operate, because the section sets forth an entirely separate sentencing scheme, i.e., "3-6-9," which is not typical of enhancements or sentencing factors, which generally add additional time to an established term, rather than creating a new tripart sentencing scheme. (See *People v. Rayford* (1994) 9 Cal.4th 1, 9–10 [36 Cal.Rptr.2d 317, 884 P.2d 1369] (*Rayford*) [enhancements usually add additional time to a term of imprisonment or if the enhancement provides for a tripart sentencing scheme the term "enhancement" is explicitly used in the statutory language].) On the other hand, section 213 does not appear to create a new offense, because the language, "[r]obbery of the first degree is punishable as follows," causes the statute to read as though it is merely a sentencing scheme for the offense of robbery that is defined in sections 211 and 212.5. (§ 213, subd. (a)(1).)

▮ Our Supreme Court has "set out guidelines for determining whether a particular statutory provision is a substantive offense, or an enhancement or penalty provision." (*People v. Garcia* (1998) 63 Cal.App.4th 820, 827–828 [73 Cal.Rptr.2d 893], fn. omitted (*Garcia*).) In *Rayford*, our Supreme Court examined whether section 208, which sets forth the punishment for

---

[3] For reference, the case cited by the People is *People v. Colbert* (1988) 198 Cal.App.3d 924, 928 [244 Cal.Rptr. 98].

kidnapping, contained a separate offense in subdivision (d) for kidnapping with the intent to commit a sexual offense. (*Rayford, supra*, 9 Cal.4th at p. 8.) The court concluded section 208, subdivision (d), did set forth a separate offense from simple kidnapping. (*Rayford*, at p. 11.) "In reaching this conclusion, the court looked first to the words of the statute, then to the legislative history of the section, the way the statute was treated in other related code sections, and the fact that the Legislature itself expressly characterized the section as a separate crime. ([*Rayford*, at pp. 8–11].)" (*Garcia, supra*, 63 Cal.App.4th at p. 828.) The primary factor in determining whether a statute operates as a sentencing factor, a sentencing enhancement, an element of the offense, or a separate offense is "the legislative intent in enacting the statute." (*Id.* at pp. 829–830.)

We have concluded *ante* that the language of the statute is ambiguous. Accordingly, we now examine the legislative history of section 213 in order to discern the intent of the Legislature. The language concerning in-concert robberies was added to section 213 in 1994, by Assembly Bill No. 779. (Assem. Bill No. 779 (1993–1994 Reg. Sess.) § 1.) We note that when the bill was introduced on February 23, 1994, the purpose of the legislation was to create the crime of premises invasion.[4] (Legis. Counsel's Dig., Assem. Bill No. 779 (1993–1994 Reg. Sess.) as introduced Feb. 23, 1994.) The "new crime" of home invasion was defined as follows: "[I]t is the crime of home invasion for a person to enter specified places by force or violence . . . with the intent to intimidate or harm any person therein while *acting in concert with two or more other persons actually present in the same place where the person or one of the persons acting in concert with that person* threatens to inflict or does inflict great bodily injury on a person who is not a principal and who is actually present in the same place." (*Ibid.*, italics added.)

The language regarding the Legislature's intent to create a new crime was deleted from the June 23, 1994, version of the statute. (Legis. Counsel's Dig., Assem. Bill No. 779 (1993–1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 305.) A new intent was not expressed; however, in this amended version, the term "robbery" was substituted for "premises invasion." (*Ibid.*) Also, the new language included use of the term "penalty provision" rather than "new crime." (*Ibid.*) Further, the proposed changes to the firearm enhancement statute (§ 12021.1) and gang enhancement statute (§ 186.22)—to include the new crime of "premises invasion" in those provisions—were deleted. We infer from the deletions and substituted language that the Legislature ultimately did not intend for section 213 to establish a new offense.

---

[4] On our own motion, we have taken judicial notice of the entire legislative history of Assembly Bill No. 779 (Assem. Bill No. 779 (1993–1994 Reg. Sess.)). (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

■ Accordingly, the next question we must address is whether section 213 is meant to operate as a sentencing factor or an enhancement. We have not found, nor have the People offered, any basis by which to conclude the Legislature intended the in-concert element of section 213 to operate as a sentencing factor. Sentencing factors typically do not establish a new tripart sentencing scheme; rather, they justify the imposition of an upper term sentence. (§ 1170, subd. (b); Cal. Rules of Court, rule 4.421.) Accordingly, because section 213, subdivision (a)(1)(A), establishes a new tripart sentencing scheme, we conclude it is not a sentencing factor, as defined in California Rules of Court, rule 4.421(c). We note that minor's argument, that section 213 cannot be a sentencing factor because the section has a corresponding jury instruction, is not persuasive. In the wake of *Cunningham v. California*, many sentencing factors for adult criminal defendants must be found true by a jury beyond a reasonable doubt. (*Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856, 871].) ■ Accordingly, the fact that a provision has a corresponding jury instruction is not persuasive on the issue of whether the section operates as a sentencing factor or an enhancement.

■ For the following reasons we conclude that section 213, subdivision (a)(1)(A), operates as a sentence enhancement. First, the legislative history of the section employs the term "penalty provision." (Legis. Counsel's Dig., Assem. Bill No. 779 (1993–1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 305.) Second, the section creates a separate tripart sentencing scheme. (§ 213, subd. (a)(1)(A).) In *Rayford*, our Supreme Court noted that enhancement provisions may provide for a " 'range of three possible terms of imprisonment,' " although that is not the typical form of an enhancement. (*Rayford, supra*, 9 Cal.4th at p. 9.) Third, section 213, subdivision (a)(1)(A), provides for a higher punishment based on adding an additional element to the crime of first degree robbery, i.e., that a robbery took place in concert. This structure is typical of enhancements, which usually " 'focus on an element of the commission of the crime . . . which is not present for all such crimes . . . and which justifies a higher penalty than that prescribed for the offenses themselves.' [Citation.]" (*Garcia, supra*, 63 Cal.App.4th at p. 828.)

In sum, we disagree with the People's argument that an allegation that a robbery took place in concert is merely a sentencing factor, which does not need to be pled or proven beyond a reasonable doubt.

## D. Due Process

Next, we address minor's argument that his maximum confinement time should be set at six years, rather than nine years. Minor contends his due process rights were violated when the court set his maximum confinement time at nine years, because it was not alleged and he did not admit to committing the robbery in concert.

■ " 'Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citations.]" (*In re Jesse P.* (1992) 3 Cal.App.4th 1177, 1182 [5 Cal.Rptr.2d 321].) ■ If the punishment for an enhancement is to be included in a minor's maximum confinement time, then the enhancement must be pled and proven beyond a reasonable doubt. (Welf. & Inst. Code, § 726, subd. (c); see also *In re Christopher B.* (2007) 156 Cal.App.4th 1557, 1565 [68 Cal.Rptr.3d 253] [maximum term of imprisonment may include enhancements if pled and proven].)

The petition filed against minor did not cite section 213 or allege that minor acted in concert. Accordingly, minor was not advised that he was charged with acting in concert. When minor admitted the allegation of "home invasion robbery," the court did not ask if the robbery took place in concert. Consequently, minor was never informed that he was admitting that he committed the robbery in concert. Therefore, we conclude minor's due process rights were violated because his maximum confinement time was set at nine years, which is the term for an in-concert robbery, and such an offense was neither alleged nor admitted.

The People contend minor had adequate notice because the petition provided that the possible confinement time would be nine years, which is the sentence for an in-concert robbery. We disagree. The reference to a possible nine-year sentence creates an ambiguity in the petition, but it does not provide due process notice that minor was charged with an enhancement for acting in concert.

The People further contend that because minor stipulated that the police reports would form the factual basis for his admission, and the reports include the fact that minor acted in concert, then minor admitted acting in concert. We disagree. Minor did not stipulate that everything in the police reports was accurate. Minor only stipulated that the reports formed a factual basis for his plea to first degree robbery. If minor had been charged with acting in concert, he may have disputed the accuracy of the police report. Accordingly, we find the People's argument unpersuasive.

■ Additionally, to the extent it could be argued that minor was on notice that he was charged with robbery in concert because the petition alleged he committed a "home invasion robbery," which was a term used by the Legislature when it attempted to enact the separate offense of "premises

invasion," as detailed *ante,* we find such an argument unpersuasive. The accusatory pleading must give the accused notice of the charges against him. The terms "premises invasion" and "home invasion" robbery are found in the early legislative history of section 213. (Legis. Counsel's Dig., Assem. Bill No. 779 (1993–1994 Reg. Sess.) [bill text introduced on Aug. 24, 1993, and Feb. 24, 1993].) We cannot presume that a minor would be aware of terms used in the legislative history of a provision that was not cited in the petition against him. In sum, we conclude the use of the term "home invasion robbery" in the petition did not provide minor with due process notice that he was charged with acting in concert.

### E.   Conclusion

■    In sum, section 213, subdivision (a)(1)(A), operates as an enhancement. The petition in this case did not charge minor with the enhancement of acting in concert. Minor did not admit acting in concert. Accordingly, we conclude minor's due process rights were violated, and his maximum confinement time must be modified to reflect the maximum confinement time for first degree robbery, which is six years.

### 2.

### DIAGNOSTIC EVALUATION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3.

### DJJ COMMITMENT

Minor contends the juvenile court abused its discretion by committing him to DJJ, because (1) there is insufficient evidence that minor will benefit from time at DJJ; (2) there is insufficient evidence that less restrictive alternatives would be inappropriate; and (3) the court did not give appropriate consideration to factors such as minor's age and lack of criminal history.

■    When determining the appropriate disposition in a delinquency proceeding, the juvenile courts are required to consider "(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the

---

*See footnote, *ante,* page 474.

minor, and (3) the minor's previous delinquent history." (Welf. & Inst. Code, § 725.5; see also *In re Gary B.* (1998) 61 Cal.App.4th 844, 848–849 [71 Cal.Rptr.2d 824].) Additionally, "there must be evidence in the record demonstrating both a probable benefit to the minor by a [DJJ] commitment and the inappropriateness or ineffectiveness of less restrictive alternatives." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396 [4 Cal.Rptr.3d 809].) "A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion. [Citation.]" (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329–1330 [117 Cal.Rptr.2d 899].)

We address each factor in turn. First, as to minor's age, the juvenile court did not explicitly state minor's age on the record; however, it remarked that minor is a "young man." The court also commented on minor's lack of accomplishment at school, and need for further education, which we infer means the court recognized minor's grade level. Accordingly, we conclude the court properly considered minor's age.

Second, in regard to the circumstances and gravity of the offense, the juvenile court found that "[t]his is one of the most serious offenses that we've seen in a long time. It involved a great deal of violence, planning and criminal sophistication, and a high degree of cruelty. There was a weapon involved. And they happened to pick a victim who was vulnerable and had a preexisting medical condition, which was aggravated by his experience." Based upon these comments, we find the juvenile court properly considered the circumstances and gravity of the offense.

Third, as to minor's prior delinquent history, the court acknowledged that minor did not have a record of prior offenses. The court stated, when committing minor to DJJ, "there has not been the usual steps in between." Accordingly, we conclude the court properly considered minor's lack of prior offenses.

Fourth, in regard to the probable benefit minor will obtain from a DJJ commitment, the court found minor was in need of long-term rehabilitation, which would include drug counseling, family counseling, victim awareness, schooling, and anger management. The court concluded that minor would need a closed setting, i.e., DJJ, in order to succeed with a long-term rehabilitation program, because minor "has a history of running away" and has displayed violent behavior. In sum, the court found minor would benefit from DJJ because it would provide a secure environment that would allow him to take advantage of worthwhile programs.

Minor stresses that the juvenile court said that it "would *anticipate* [minor's rehabilitative needs] would be addressed by the programs [minor] would participate in at [DJJ]." (Italics added.) Minor argues that this quote shows the court did not find how minor would benefit from being committed to DJJ. We are not persuaded by minor's argument. A juvenile court must determine if the record supports a finding that it is *probable* the minor will benefit from being committed to DJJ. (*In re Angela M., supra*, 111 Cal.App.4th at p. 1396.) In the instant case, we infer the juvenile court found it was probable minor would benefit from being committed to DJJ, because it anticipated minor's needs would be addressed by programs offered at DJJ. There is no requirement that the court find exactly how a minor will benefit from being committed to DJJ. The court is only required to find if it is probable a minor will benefit from being committed, and the court did so in this case.

Next, minor cites independent and government reports that have concluded wards at DJJ do not receive adequate rehabilitative care. Minor argues that due to the poor care provided by DJJ he is not likely to benefit from commitment to DJJ. As noted by the juvenile court, minor will benefit from commitment to DJJ, in part, because it will provide him with a secure environment. In other words, it is not merely the programs at DJJ which provide a benefit to minor, but the secure setting as well. Minor requires a secure setting for his rehabilitative care, because at the age of 14, minor violently attacked another person, ran away from home, and acted in a hostile, disrespectful, and aggressive manner with staff at juvenile hall. In sum, we are unconvinced by minor's argument that he will not benefit from being committed to DJJ due to its allegedly subpar programs.

Fifth, in regard to the inappropriateness or ineffectiveness of less restrictive alternatives, the juvenile court considered placing minor in a camp, rather than DJJ, but selected DJJ, because the court did "not feel that any open setting for this minor [would be] appropriate." The court relied on several facts when determining that minor required a secure setting. First, the court cited minor's history of running away from home. Second, the court referenced "the extreme violence and seriousness involved in this particular case." Third, the court mentioned minor's hostile and aggressive conduct at juvenile hall. We conclude the court properly considered whether less restrictive alternatives would be inappropriate or ineffective.

In sum, the juvenile court considered all the proper factors prior to committing minor to DJJ. As noted *ante*, the court's decision as to each factor was supported by the record. Accordingly, we find no abuse of discretion.

## DISPOSITION

The juvenile court's disposition is modified to reflect that minor's maximum confinement time is six years. In all other respects, the disposition of the juvenile court is affirmed.

Ramirez, P. J., and Gaut, J., concurred.