Filed 12/21/20 In re A.H. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | 2d Crim. No. B303492 (Super. Ct. No. 1436363-D) (Santa Barbara County) |
| THE PEOPLE, Plaintiff and Respondent, v. A.H., Defendant and Appellant. | |

After A.H. admitted an allegation that she committed first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a)), the juvenile court sustained a wardship petition (Welf. & Inst. Code, § 602) and ordered her committed to the custody and care of the Division of Juvenile Justice (DJJ) for a maximum term of seven years (*id.*, § 731). A.H. contends the court erred when it ordered a DJJ placement. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

In June 2019, John Doe called Santa Maria police and told them that he had been kidnapped and that his car had been stolen. Earlier that day, 16-year-old A.H. sent Doe a text message saying that she wanted to hang out, and asked him to meet her at a motel. When he arrived, A.H. escorted him to a room where another female was present. After Doe sat down on the bed, two males walked out of the bathroom. One of them had a gun. He put it against Doe's head, and ordered him to empty his pockets.

The two males showed Doe that the gun was loaded. They punched him and told him that they would kill him and his family if he did not do as he was told. They took his cell phone, necklace, cash, and car keys, and forced him to undress.

After about 30 minutes, one of the gunmen, A.H., the other female, and Doe got into Doe's car and drove to an apartment complex. Once they arrived, the gunman told Doe to get out of the car. Doe complied, and the gunman drove away in Doe's car. Doe walked home and called 911. Police arrested A.H. and her accomplices over the course of the next few days.

A.H. received several reports for disruptive behavior while in custody pending disposition of the case. She refused to attend school, did not follow staff instructions, was disrespectful toward staff, and got into verbal and physical altercations. She was also found in possession of contraband.

At the disposition hearing, the juvenile court noted that A.H. had been in 23 different foster and group homes before she was declared a ward of the court in the instant case. She was not successful in these placements. She violated the terms of probation. She had poor behavior and did not comply with the

rules at her group home, left without permission, and refused to return. She failed to keep her mother and probation officer informed of her whereabouts, and did not report to probation as directed. She refused to submit to drug testing.

The juvenile court also noted that the probation report stated that A.H. "ha[d] been offered a multitude of services" but instead of participating chose to "associate with peers that carr[ied] guns, align[ed] themselves with criminal street gangs, and use[d] drugs." Based on her refusal to participate in rehabilitative services and the need to protect the community, the report recommended that the court order a DJJ placement. Several programs there—including those related to substance abuse, mental and physical health, family and community support, and violence and aggression—could benefit A.H.

The juvenile court agreed with the probation department's recommendation. A.H. had not succeeded in less restrictive placements. She had left those where rehabilitative services were offered, and thus needed to be placed in a secure facility. Juvenile hall met that criterion, but it did not offer the same level of rehabilitative programs as the DJJ. A DJJ placement was accordingly appropriate, "the best place to give [A.H.] an opportunity to get some skills that are going to keep her out of ultimately going to adult prison."

DISCUSSION

A.H. contends the juvenile court erred because it ordered a DJJ placement without adequately considering alternative placements or her specific rehabilitative needs. We disagree.

3

"One of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement . . . and progressing to . . . placement at the DJJ." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.) "Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted." (*Ibid.*) Such a commitment is permissible so long as "the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate." (*Ibid.*)

We review a commitment order for abuse of discretion. (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.) The juvenile court abuses its discretion ""'whenever [it] exceeds the bounds of all reason, all of the circumstances being considered.'"" [Citation.]" (*Ibid.*) The court also abuses its discretion "'when the factual findings critical to its decision find no support in the evidence.' [Citation.]" (*Ibid.*)

There was no abuse of discretion here. First, the evidence demonstrated that A.H. would probably benefit from a DJJ commitment. The juvenile court documented that, despite her young age, A.H. had "experienced a large amount of turmoil in her life": she associated with criminals, skipped school, got in verbal and physical altercations, possessed drug contraband, and refused to participate in the services offered to her. Many of the programs offered at DJJ directly addressed these sources of turmoil. And it is rational to infer that A.H. would be more likely to take advantage of these programs in a secure setting like the

4

DJJ than she had in previous placements. (See, e.g., *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485-486.)

Second, the evidence showed that less restrictive placements would be ineffective. A.H. had been in 23 different placements prior to being declared a ward of the court, and four more after. She routinely violated the terms of these placements, refused to participate in programming, and failed to follow staff instructions. She also left her placements without permission and ignored requirements to report her whereabouts to her mother and the probation department. This history supports the juvenile court's conclusion that a placement less restrictive than the DJJ would be ineffective. (See, e.g., *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1397.)

This case is unlike *In re Carlos J.* (2018) 22 Cal.App.5th 1, on which A.H. relies. In *Carlos J.*, the juvenile court had "no evidence . . . regarding any 'intensive treatment' [the minor] might receive at [DJJ]." (*Id.* at p. 10.) Though there was evidence that the minor suffered from psychological problems and was affiliated with a gang, the court had no evidence of what, if any, mental health and gang intervention services the DJJ could provide. (*Id.* at p. 11.) Here, in contrast, the disposition report listed the specific programs offered at the DJJ. Many of those programs were directly related to the "turmoil" in A.H.'s young life: substance abuse, a lack of family and community support, and violence and aggression. There was thus sufficient evidence from which the juvenile court could infer that a DJJ placement would offer probable benefits to A.H.[1]

---

[1] Given our conclusion, we need not—and do not—consider the Attorney General's argument that *Carlos J.* was wrongly decided.

DISPOSITION

The juvenile court's disposition order, entered November 12, 2019, is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:



GILBERT, P. J.



PERREN, J.

6

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Laurie A. Thrower, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.