Filed 4/24/14  P. v. Young CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIAN KING YOUNG,<br><br>    Defendant and Appellant. | A134248<br><br>(Contra Costa County<br>Super. Ct. No. 50811471)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

THE COURT:

On page 5, line 14, after the sentence ending with "conviction for involuntary manslaughter on that violation" add as footnote 5 the following footnote, which will require renumbering all subsequent footnotes:

> [5] Wilfully shooting at an occupied car with the intent to commit a wrongful act or to disturb, annoy or injure someone necessarily establishes implied malice. (See *People v. Chun*, *supra*, 45 Cal.4th at p. 1205 ["[A]ny juror who relied on the felony-murder rule necessarily found that defendant willfully shot at an occupied vehicle. . . . No juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life–which is a valid theory of malice."].)

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Date: _____ P.J.

1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRIAN KING YOUNG,<br><br>        Defendant and Appellant. | A134248<br><br>(Contra Costa County<br>Super. Ct. No. 50811471) |

Defendant Brian King Young appeals from a judgment convicting him of second degree murder and shooting at an occupied car and sentencing him to 73 years to life in prison. He contends the trial court made numerous instructional errors and that the judge failed to exercise his discretion in sentencing defendant to consecutive terms. We find no error with regard to the jury instructions, but agree that the record suggests the court incorrectly believed fully consecutive sentencing was mandatory. Accordingly, we shall reverse the judgment and remand for a new sentencing hearing and affirm the judgment in all other respects.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged by an amended information with one count of murder (Pen. Code,[1] § 187—count one), four counts of attempted murder (§§ 187, 664—counts two through five), and one count of shooting at an occupied motor vehicle (§ 246—count six). As to all counts, the district attorney alleged enhancements for personal use of a

---

[1] All statutory references are to the Penal Code unless otherwise noted.

1

firearm causing great bodily injury or death as to two victims (§ 12022.53, subds. (b), (c), (d)). As to count one, the district attorney also alleged an enhancement for personal use of a firearm (§ 12022.5, subd. (a)(1)), personal discharge of a firearm at a vehicle causing great bodily injury (§ 12022.5, subd. (b)(1)), and shooting from a motor vehicle (§ 190, subd. (d)). As to all the attempted murder counts, the district attorney alleged enhancements for personal use of a firearm and personal infliction of great bodily injury. (§§ 12022.5, subd. (a)(1), 12022.7, subd. (a).)

The issues raised by defendant on appeal do not require analysis of the evidence presented at trial. Accordingly, we rely on defendant's summary of the evidence as set out in his appellate brief: "On the evening of April 3, 2008, a tragedy unfolded on westbound Interstate 80 in Contra Costa County. . . . [¶] Two cars were traveling westbound. A Dodge being driven by Tiana Sheppard had her boyfriend Aaron Myers in the front passenger seat and their friend [defendant] in the right rear seat. A Pontiac was being driven by Rhonda White, who was the godmother of Ms. Sheppard's child and a close friend of Mr. Myers and [defendant]. Also in Ms. White's car were Donnaray Allison, Sean Wydermyer, Christopher Robinson, and Ashley Davis, all of whom knew Ms. Sheppard, Mr. Myers, and [defendant]. [¶] Ms. White's Pontiac was behind and to the left of the Dodge, when Ms. White recognized her friends in the Dodge. Ms. White sped up to overtake the Dodge, and Ms. White and Mr. Allison signaled to the people in the Dodge. Multiple shots from two weapons were fired from the Dodge into the Pontiac, which shots shattered the driver's side windows of the Dodge and passenger side windows of the Pontiac. Ms. White was killed, and Mr. Allison — who was in the front right of Ms. White's car — was wounded. [¶] How could two friends have shot and killed a close friend, and shot and wounded another friend? One answer was that Mr. Myers had recently been shot, and [defendant] had recently been fired upon. A second answer was Ms. White's overtaking Ms. Sheppard's car late at night, with people in Ms. White's car making hand movements. A third answer was that Mr. Myers came to the mistaken conclusion that they were under attack by people in the Pontiac. The final answer was that [defendant], in the rear seat of the Dodge, misinterpreted the gunfire and breaking

2

glass of the Dodge's driver's side windows as shots being fired into his car from the Pontiac. [¶] There were few issues at trial, because [defendant] took the stand and admitted having had a gun and having fired at the other car. One issue concerned who had which weapon, when a pistol and an assault rifle had been used. Another issue concerned whether it was Mr. Myers or [defendant] who had first fired. The final and most significant issues concerned [defendant's] intent and belief when he fired. [¶] [Defendant] told the jury that he had been in the rear seat, just waking up, when he heard semiautomatic gunfire and became aware the windows in his car were shattering. He believed his car was under attack, and he reached into his duffle bag for a .380 pistol, which he blindly fired out the window, without an intent that anyone be killed."

The jury found defendant guilty of second degree murder and of shooting at an occupied motor vehicle. As to count one, the jury found that all the alleged firearm use enhancements were true, including that the murder was perpetrated by means of shooting from a vehicle intentionally at another person outside the vehicle with the intent to inflict great bodily injury. The jury deadlocked on the remaining counts, which were dismissed at sentencing.

The court initially sentenced defendant to a prison term of 50 years to life. Thereafter, on the prosecutor's motion, the court recalled the sentence and sentenced defendant to a total 73 years to life in prison. Defendant's appeal has been timely filed.

## DISCUSSION

1. *The jury was properly instructed on involuntary manslaughter.*

The jury was instructed with regard to involuntary manslaughter in relevant part as follows: "When a person commits an unlawful killing but does not intend to kill and does not act with conscious disregard for human life, then the crime is involuntary manslaughter. [¶] The difference between other homicide offenses and involuntary manslaughter depends on whether the person was aware of the risk to life that his or her actions created and consciously disregarded that risk. An unlawful killing caused by a willful act done with full knowledge and awareness that the person is endangering the life

3

of another, and done in conscious disregard of that risk, is voluntary manslaughter or murder. An unlawful killing resulting from a willful act committed without intent to kill and without conscious disregard of the risk to human life is involuntary manslaughter." (CALCRIM No. 580.) Defendant does not dispute that the jury was properly instructed that if the killing occurred as the result of conduct that was only criminally negligent, he would be guilty of involuntary manslaughter. [2] He argues that the jury should have been instructed further that "a killing without malice during an assaultive felony is involuntary manslaughter." He asserts this additional instruction was required because the jury "was predictably unwilling to treat that which occurred here — opening fire with an assault rifle and a semiautomatic pistol — as 'negligent discharge' of a firearm."

In *People v. Bryant* (2013) 56 Cal.4th 959, our Supreme Court held that a killing committed without malice in the course of an inherently dangerous assaultive felony is not voluntary manslaughter. (*Id*. at pp. 964, 969-970.) The court explained, "A defendant who has killed without malice in the commission of an inherently dangerous assaultive felony must have killed without either an intent to kill or a conscious disregard for life. Such a killing cannot be voluntary manslaughter because voluntary manslaughter requires either an intent to kill or a conscious disregard for life." (*Id*. at p. 970.) Although the majority decision does not reach the question of whether such a killing would be involuntary manslaughter, in her concurrence, Justice Kennard concludes that a killing committed without malice in the course of an assaultive felony can be involuntary manslaughter. (*Id*. at p. 971.) She explains, "A killing during an assault with a deadly weapon can be murder if the prosecution proves that the defendant acted with malice

---

[2] The jury was instructed pursuant to CALCRIM No. 970 that it could find defendant guilty of involuntary manslaughter if it found that he caused the victim's death while committing, with criminal negligence, the crime of shooting a firearm in violation of section 246. The jury was instructed that to prove defendant violated section 246 in a grossly negligent manner, "the People must prove that: [¶] 1. The defendant intentionally shot a firearm; [¶] 2. The defendant did the shooting with gross negligence; [¶] AND [¶] 3. The shooting could have resulted in the injury or death of a person; [¶] AND [¶] 4. The defendant did not act in self-defense or in defense of someone else."

4

aforethought; but the circumstance that a killing occurs during an assault with a deadly weapon does not make the killing murder, because assault with a deadly weapon is not [an enumerated felony or a nonassaultive felony for purposes of the felony murder rule[3]]. It follows, therefore, that a killing during an assault with a deadly weapon is involuntary manslaughter." (*Id*. at pp. 973-974.)

Assuming that Justice Kennard's concurrence properly states the law, defendant fails to identify what assaultive felony might form the basis of any such involuntary manslaughter instruction in this case. Shooting into an occupied vehicle in violation of section 246 is, as defendant notes, an assaultive felony. (*People v. Chun, supra,* 45 Cal.4th at p. 1200.) It cannot, however, be a predicate crime for purposes of involuntary manslaughter because section 246 requires that the shooter "maliciously and willfully" fire at an occupied vehicle.[4] Because it is not possible to commit a section 246 shooting without malice, the jury could not find defendant guilty of section 246 and base a conviction for involuntary manslaughter on that violation. Absent a suggestion of any other assaultive felony, there was no error in the court's instructions on involuntary manslaughter.

---

[3] In *People v. Chun* (2009) 45 Cal.4th 1172, 1200, the court held that when an unlawful killing occurs during the commission of an "assaultive" felony, the felony merges with the homicide and cannot be the basis of a second degree felony-murder instruction.

[4] The jury was instructed pursuant to CALCRIM No. 965 in relevant part as follows: "The defendant is charged in count 6 with shooting at an occupied motor vehicle in violation of Penal Code section 246. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully and maliciously shot a firearm; [¶] AND [¶] 2. The defendant shot the firearm at an occupied motor vehicle; [¶] AND [¶] 3. The defendant did not act in self-defense or in defense of someone else. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to disturb, defraud, annoy, or injure someone else."

2.    *The jury was properly instructed on aiding and abetting.*

The prosecution alleged defendant was guilty of aiding and abetting a violation of section 246, shooting at an occupied car. Defendant contends the standard CALCRIM instructions on aiding and abetting that were given are insufficient because they failed to inform the jury clearly and unequivocally that to convict the defendant must have had the specific intent to aid and abet the general intent crime of violating section 246.[5]

In *People v. Beeman* (1984) 35 Cal.3d 547 (*Beeman*) the court held "that the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. [Citations.] [¶] When the definition of the offense includes the intent to do some act or achieve some consequence beyond the actus reus of the crime [citation], the aider and abettor must share the specific intent of the perpetrator. By 'share' we mean neither that the aider and abettor must be prepared to commit the offense by his or her own act should the perpetrator fail to do so, nor that the aider and abettor must seek to share the fruits of the crime. [Citation.] Rather, an aider and abettor will 'share' the perpetrator's specific intent

---

[5] The jury was instructed pursuant to CALCRIM No. 400 as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be guilty of other crimes that occurred during the commission of the first crime."  The jury was further instructed, under CALCRIM No. 401, as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2.The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*Beeman*, *supra*, 35 Cal.3d at p. 560.) The court went on to say: "[A]n appropriate instruction should inform the jury that a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*Id*. at p. 561.) In *People v. Mendoza* (1998) 18 Cal.4th 1114, 1122–1123, the court confirmed that "[t]he mental state necessary for conviction as an aider and abettor . . . is different from the mental state necessary for conviction as the actual perpetrator. [¶] The actual perpetrator must have whatever mental state is required for each crime charged . . . . An aider and abettor, on the other hand, must 'act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' " (See also *People v. Lee* (2003) 31 Cal.4th 613, 624 [aider and abettor "must 'know[] the full extent of the perpetrator's criminal purpose and [must] give[] aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime' "].)

Contrary to defendant's argument, the standard CALCRIM instructions given here on aiding and abetting accurately state the law. The instructions as a whole clearly and unmistakably require the jury to make a determination of defendant's mental state. In the words of the instructions, the jury was to determine whether defendant knew of the perpetrator's unlawful purpose and "specifically intend[ed] to, and [did] in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." Accordingly, we find no error.

3.     *The jury was properly instructed regarding the section 190, subdivision (d) enhancement allegation.*

After finding that defendant had committed the second degree murder of Rhonda White, the jury found true the allegation that "The killing of Rhonda White was

7

perpetrated by means of shooting a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict great bodily injury pursuant to [Penal Code] section 190(d)." Section 190, subdivision (d), is a penalty provision that focuses on the manner of killing and imposes an additional five years to the usual 15-year base term for second degree murder. [6] The provision acts as an enhancement rather than a new offense. (*People v. Garcia* (1998) 63 Cal.App.4th 820, 827-829.)

In this case, the jury was instructed that if it found that defendant had committed a violation of section 246 (shooting at an occupied vehicle), it could find defendant guilty of second degree murder if it concluded, among other things, that "a reasonable person in the defendant's position would have known that the commission of murder . . . was a natural and probable consequence of the commission of shooting at an occupied motor vehicle."[7] The jury was instructed further, "If you find the defendant guilty of second degree murder as charged in count one, you must then decide whether the People have proved the additional allegation that the murder was committed by shooting a firearm

---

[6] Section 190, subdivision (d) reads: "Every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 20 years to life if the killing was perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury."

[7] The jury was instructed pursuant to CALCRIM No. 402 as follows: "The defendant is charged in count six with Penal Code section 246, 'shooting at an occupied vehicle' and in counts one [through] five with murder and attempted murder. [¶] You must first decide whether the defendant is guilty of count six. If you find the defendant is guilty of this crime, you must then decide whether he is guilty of counts one [through] five. [¶] Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time. [¶] To prove that the defendant is guilty of murder and attempted murder, the People must prove that: [¶] 1. The defendant is guilty of shooting at an occupied motor vehicle; [¶] 2. During the commission of shooting at an occupied motor vehicle a coparticipant in that shooting at an occupied motor vehicle committed the crime of murder and attempted murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of murder and attempted murder was a natural and probable consequence of the commission of shooting at an occupied motor vehicle. [¶] A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. . . ."

from a motor vehicle. [¶] To prove this allegation, the People must prove that: [¶] 1. The defendant and/or Aaron Myers killed a person by shooting a firearm from a motor vehicle; [¶] 2. The defendant and/or Aaron Myers intentionally shot at a person who was outside the vehicle; [¶] AND [¶] 3. When the defendant and/or Aaron Myers shot a firearm, the defendant intended to inflict great bodily injury on the person outside the vehicle.[¶] . . . [¶] The People must prove that the defendant intended that the person shot at suffer great bodily injury when he and/or Aaron Myers shot from the vehicle. However, the People do not have to prove that the defendant intended to injure the specific person who was actually killed. [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved." (CALCRIM No. 525.)

Defendant contends that the enhancement allegation must be reversed because the jury was not instructed that "it needed to decide whether murder by shooting from a vehicle with the specific intent to inflict great bodily injury, rather than merely 'murder,' was a natural and probable consequence of the target offense." He asserts that the "error occurred when the jury made a section 190(d) finding against him based on an act done, and the specific intent harbored by Mr. Meyers, without being required to find that Mr. Meyer's act and specific intent had been the reasonably foreseeable result of the 246 violation."

Contrary to defendant's argument, the section 190, subdivision (d) enhancement does not require a finding of foreseeability. As noted above, section 190, subdivision (d) focuses on whether the killing occurred as the result of a drive-by shooting. Section 190, subdivision (d) requires the jury to find that at the time the shot was fired, either by defendant or Myers, defendant intended the shot to inflict great bodily injury on a person outside the vehicle. This is an entirely different question from whether murder is the reasonably foreseeable or natural and probable consequence of shooting at an occupied vehicle.

9

4.	*The matter must be remanded for resentencing.*

Defendant was sentenced to a total term of 73 years to life. On the second degree murder conviction (count 1), the court imposed a base term of 20 years to life, with a consecutive 25-year-to-life enhancement under section 12022.53, subdivision (d).[8] On the violation of section 246 (count 6), the court imposed a consecutive three year term with a consecutive 25-year-to-life enhancement also under section 12022.53, subdivision (d).[9] Defendant contends the trial court incorrectly believed consecutive sentences were mandatory on counts one and six.

Contrary to the Attorney General's argument, section 12022.53 subdivision (d) does not require consecutive sentences on counts one and six. (*People v. Bui* (2011) 192 Cal.App.4th 1002, 1014, 1016.) The section 12022.53, subdivision (d), enhancements " 'simply follow from' [defendant's] conviction on [the] 'substantive offenses' " and do not govern the relationship between different counts. (*Ibid.* [trial court erred in imposing consecutive enhancement terms under section 2022.53, subdivision (b) when sentencing defendant to concurrent terms for the underlying felony convictions].) Absent a statutory restriction, the trial court had discretion to determine whether defendant's sentences on two substantive counts should run concurrently or consecutively. (*People v. Bradford* (1976) 17 Cal.3d 8, 20.)

---

[8] Section 12022.53, subdivision (d) provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

[9] Initially, the court sentenced defendant to the midterm of five years on count six and ordered the 25-year enhancement under section12022.53, subdivision (d) to run concurrent to the enhancement imposed on count 1 for a total sentence of 55 years to life. However, when it was brought to the court's attention that section 12022.53, subdivision (d) required each enhancement be imposed consecutively to the base term to which it is tied, the court held a second sentencing hearing and modified defendant's sentence, "reluctantly" imposing fully consecutive terms on both counts but reducing the sentence imposed on count six to the low term of three years.

As defendant suggests, comments made by the judge at the sentencing hearings suggest that he may have imposed concurrent sentences on counts one and six had he not mistakenly believed consecutive sentences were mandatory. At the initial sentencing hearing, the prosecution argued that the minimum sentence the court could impose was 73 years to life. The judge questioned that assertion, asking whether it could run "parts of the sentences concurrently?" The prosecutor responded, "I don't believe so, and the reason I don't [believe] is because . . . the jury made specific findings with respect to the victims who were injured in the respective crimes, and . . . [¶] . . . because Donnaray Allison is a separate and distinct victim from Rhonda White, I don't believe that the court can run those two [counts] concurrent." The prosecutor argued in the alternative that, even if the court viewed the decision as discretionary, the facts warranted consecutive terms. Defense counsel disagreed, arguing that the prosecution "has cited no authority whatsoever for her untenable position that the minimum is 73, and that the court has no discretion to sentence concurrently." He added that because the violation of section 246 and the second degree murder "were the same acts, circumstances and occurrence" they must run concurrent. As noted above, at the initial hearing the court imposed the sentences on count one and count six consecutively, but ordered the enhancements to run concurrently. When defendant was resentenced, the issue of consecutive or concurrent sentences did not come up again. Rather, defense counsel focused his argument entirely on whether section 654 required that some or all of the term imposed on count six be stayed. Ultimately, the court imposed fully consecutive terms explaining, "The argument by the defense is that this is essentially a 654 type of situation and that the shooting of Donnaray Allison . . . was committed during the same acts as the shooting of . . . Rhonda White. . . . But the California Supreme Court has said that there is judicially created exception for multiple victims . . . . [¶] So when you read it all together, the cases are . . . requiring that the court sentence the defendant consecutively. . . . I felt that my first sentence was a fair sentence, especially when considering what happened with the other defendant. Because it was basically . . . the same conduct, though the jury here found a second degree murder, the jury there found involuntary, and he received a 38-year

11

sentence. [¶] But the appellate court and the Supreme Court have said that the court should impose a consecutive sentence. And indeed, 12022.53(d) says that the court shall impose a consecutive sentence, so the court is going to impose a consecutive sentence. [¶] And I do it reluctantly . . . , but as the trial court, I am bound to follow what the appellate courts tell me to do, and this is what they've told me I need to do."

Based on the above, it appears the court believed incorrectly that fully consecutive terms were required in this case. The prosecution incorrectly advised the court that the minimum term available was 73 years to life and defense counsel arguably confused the issues by focusing on the impact of section 654. As noted by the court, the multiple victim exception to section 654 is applicable in this case, but merely means that sentences may be imposed on multiple counts and not stayed. (*People v. Davey* (2005) 133 Cal.App.4th 384, 390 [section 654 does not preclude multiple punishment when defendant's violent act injures different victims].) It does not, however, resolve the question of whether concurrent or consecutive punishment is appropriate, let alone require consecutive terms. (*People v. Deloza* (1998) 18 Cal.4th 585, 591-592 ["Section 654 is irrelevant to the question of whether multiple current convictions are sentenced concurrently or consecutively. Rather, if a defendant commits two crimes, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed. [Citation.] Section 654 does not allow any multiple punishment, whether concurrent or consecutive." ]; see also *People v. Bui, supra*, 192 Cal.App.4th at p. 1016; *People v. Felix* (2009) 172 Cal.App.4th 1618, 1630-1631.) Accordingly, we shall remand for resentencing.

## DISPOSITION

The judgment is reversed and the matter remanded for resentencing. The judgment is affirmed in all other respects.

12

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.