Filed 9/21/22  In re J.M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | H048921 (Santa Clara County Super. Ct. No. 17JV42313T) |
| THE PEOPLE, Plaintiff and Respondent, v. J.M., Defendant and Appellant. | |

After J.M. admitted that he committed a carjacking (Pen. Code, § 215, subd. (a)) and a robbery (Pen. Code, § 212.5, subd. (c)) and further admitted criminal street gang and firearm allegations, the juvenile court continued him as a ward of the court and committed him to the California Department of Corrections and Rehabilitations, Division of Juvenile Justice Facilities (DJJ) for a maximum term of confinement of nine years.

On appeal, J.M. argues the juvenile court improperly imposed the upper term on the principal count of carjacking, rather than the middle term as required by Welfare and Institutions Code section 731, former subdivision (c).[1]  The Attorney General argues the nine year maximum term of confinement is lawful because it resulted from the juvenile court aggregating terms from multiple prior sustained petitions.  The Attorney General also points out that the juvenile court incorrectly calculated the maximum term of

_____

[1] Unspecified statutory references are to the Welfare and Institutions Code.

imprisonment on count 1 as 29 years, instead of the correct term of 25 years to life, plus five years. We requested supplemental briefing to address the lack of advisement of this indeterminate term on J.M.'s waiver and to address whether the matter should be remanded for the juvenile court to exercise its discretion regarding the firearm enhancement (Pen. Code, § 12022.53, subds. (d), (e)(1)) as discussed in *People v. Tirado* (2022) 12 Cal.5th 688, 699 (*Tirado*).

As discussed below, we conclude the juvenile court did not err in imposing a nine year term of confinement. We also conclude that the failure to advise J.M. of the indeterminate term set forth in Penal Code section 12022.53, subdivisions (d) and (e)(1) does not invalidate his waiver, but the matter must be remanded for the juvenile court to exercise its discretion regarding that enhancement. Accordingly, we will reverse the commitment order for the juvenile court to do so and prepare a new commitment order reflecting the maximum term of commitment and maximum period of imprisonment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Procedural history*

On September 21, 2020, the Santa Clara County District Attorney filed a juvenile wardship petition (Petition T) alleging J.M. committed one count of carjacking (Pen. Code, § 215, subd. (a); count 1) and four counts of robbery (Pen. Code, § 212.5, subd. (c); counts 2-5). The petition made the following special allegations: (1) J.M. committed each of the offenses for the benefit of, at the direction of, and in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(C)); (2) J.M. personally used a firearm in committing each of the offenses (Pen. Code, § 12022.53, subd. (b)); and (3) in connection with counts 1 and 2, J.M. personally discharged a firearm, causing great bodily injury (Pen. Code, § 12022.53, subds. (d), (e)(1)). Petition T also expressly notified J.M. that the district attorney intended "to move for an increase of the maximum term of confinement by aggregating the terms of all previously sustained petitions."

2

On January 22, 2021, the juvenile court granted the prosecution's motion to amend the petition to dismiss three of the robbery charges (counts 2, 4 & 5), and to amend count 3 to include the victims from dismissed counts 4 and 5.  J.M. admitted counts 1 and 3 of the petition as amended.  He further admitted the criminal street gang and personal use of a firearm allegations in connection with both counts (Pen. Code, §§ 186.22, subd. (b)(1)(C), 12022.53, subd. (b)).  In connection with count 1, J.M. admitted he was a principal in the offense and that another principal discharged a firearm causing great bodily injury (Pen. Code, § 12022.53, subds. (d), (e)(1)).

At the February 23, 2021 dispositional hearing, the juvenile court continued J.M. as a ward of the court and committed him to the DJJ.  The court set J.M.'s maximum time of confinement at the DJJ at nine years because "public safety requires that the Court be able to supervise [him] up until the age of 25."

J.M. timely appealed.

**B**. **Facts**[2]

On September 10, 2020, San Jose Police received a report of an armed robbery, carjacking, and shooting which took place at approximately 9:30 p.m.  The four victims told police they were standing next to their car when another car with three people approached them.  Two suspects got out of their car and approached the victims.  Suspect No. 1, later identified as J.M., asked the victims if they were "from the brothers" and if they "bang" before brandishing a gun and demanding they empty their pockets.

When one victim refused to hand over the keys to his car, J.M. tried to take them away.  The two struggled over the keys and the victim fell to the ground.  J.M. handed his gun to suspect No. 2 and told him to shoot the victim.  Suspect No. 2 said that he would shoot the victim in the leg and proceeded to fire the gun two or three times, hitting the victim "in the shin areas of his leg."  Suspect No. 3 drove off in the suspects' car after the

_____

[2] Because J.M. admitted the offenses and special allegations set forth in the petition, we derive the facts from the probation report.

shooting.  J.M. took the keys from the victim's hand, and he and suspect No. 2 drove away in the victim's car.  The victims reported that J.M. and his accomplices made off with a cell phone and "some cash."

The following day, police discovered a social media account belonging to J.M. and saw he had posted a photo of himself, with a gun in his lap, sitting in a car like the one stolen the day before.  The weapon "had a clear extended magazine" similar to the one used during the offense and J.M. was wearing clothing that matched the victims' descriptions.  One of the victims positively identified J.M. in a photo line-up as "the suspect who brandished the weapon, took the victim's car keys, and drove away in the victim's vehicle."

Police arrested J.M. on September 17, 2020.  After being advised of his *Miranda*[3] rights, J.M. admitted that he:  (1) committed the robbery and carjacking; (2) drove the victim's car away from the scene; and (3) possessed the gun used during the offense.

## II.    DISCUSSION

J.M. contends that the juvenile court improperly imposed the upper term of nine years for his carjacking offense rather than the middle term of five years as required by recently enacted Senate Bill No. 823, specifically its amendment of section 731.  The Attorney General concedes that retroactive application of the amendment to section 731 is appropriate but argues that the nine-year maximum time of confinement was the result of aggregation of J.M.'s other adjudicated offenses, not because the juvenile court imposed the upper term on the principal offense.  As discussed below, we agree that the juvenile court was aware of the amendments to section 731 and imposed the middle term as required.

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

### A. *Applicable legal authority*

Sections 726 and 731 govern the physical confinement of minors committed to DJJ and "[b]oth statutes limit how long in total a minor may be physically confined." (*In re Ernesto L.* (2022) 81 Cal.App.5th 31, 38.)  Until recently, a juvenile court order committing a minor to DJJ had to " 'be limited in duration to the "maximum term of imprisonment" . . . for an adult convicted of the same offense or offenses.' " (*Ibid.*, quoting *In re Jovan B.* (1993) 6 Cal.4th 801, 818.)

On September 30, 2020, the Governor approved Senate Bill No. 823 which, among other things, amended section 731, former subdivision (c).  (See § 731, former subd. (c).)  The amended section limited the maximum term of confinement of a minor to the DJJ to "the middle term of imprisonment that could be imposed upon an adult convicted of the same offense." (Stats. 2020, ch. 337, § 28, eff. Sept. 30, 2020.)[4]  In 2021, the Governor approved Senate Bill No. 92, which amended section 726, subdivision (d)(1) to require that the order declaring the minor a ward of the court "specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Stats. 2021, ch. 18, § 7, eff. May 14, 2021.)

Under the *Estrada*[5] rule, "we presume that newly enacted legislation mitigating criminal punishment reflects a determination that the 'former penalty was too severe' and that the ameliorative changes are intended to 'apply to every case to which it

---

[4] The amended version of section 731 was repealed by its terms on January 1, 2022.  (§ 731, former subd. (d), as amended by Stats. 2020, ch. 337, § 28.)  Prior to its repeal, however, Senate Bill No. 92 enacted a new version of section 731, effective July 1, 2021, which similarly provides that the juvenile court may not commit a minor to the DJJ "for a period that exceeds the middle term of imprisonment that could be imposed upon an adult convicted of the same offense." (§ 731, subds. (b) [commitment period], (c) [effective date], as added by Stats. 2021, ch. 18, § 8.)

[5] *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

5

constitutionally could apply,' which would include those 'acts committed before its passage[,] provided the judgment convicting the defendant of the act is not final.' (*Estrada*, *supra*, 63 Cal.2d at p. 745.)  The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'  [Citations.]  'The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses.' "  (*People v. Buycks* (2018) 5 Cal.5th 857, 881-882.)

The Attorney General concedes and we agree that the statutory amendment at issue is an ameliorative change in the law, which reduces the maximum term of confinement for minors.  The Legislature did not express any intent to limit retroactive application of Senate Bill No. 823.  (Stats. 2020, ch. 337, § 28.)  Thus, pursuant to *Estrada*, the maximum term of confinement—now found in section 731, subdivision (b)—should be applied to all cases not yet final.

Whenever a minor is named a ward of the court and removed from the custody of their parent or guardian, the juvenile court must specify the maximum term of confinement, which is not to exceed "the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court."  (§ 726, subd. (d)(1).) Section 726, subdivision (d)(3), provides in part, "If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the

'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code."[6]

Finally, section 607, former subdivision (c) provides that the juvenile court may retain jurisdiction of a minor who has committed a specified offense[7] "until that person attains 25 years of age . . . if the person at the time of adjudication of a crime or crimes, would, in criminal court, have faced an aggregate sentence of seven years or more."

### B. *Additional background*

At the dispositional hearing, the court and parties agreed that the amended version of section 731 required that the court select the middle term for the principal offense and permitted the court to impose one-third the middle term on other aggregated offenses.[8] Based on its understanding of the amended section, the defense requested that the maximum time of confinement be set at five years, the middle term for a violation of section 215, subdivision (a), or at most six years, if the court elected to add a one-year term (one-third the middle term) on the robbery charge (Pen. Code, § 212.5, subd. (c)) in Petition T.

The district attorney argued that J.M.'s maximum sentence for count 1 would be 25 years, consisting of the five-year middle term for carjacking plus two additional consecutive 10-year terms on the gang and firearm enhancements. The district attorney also requested that the maximum time of confinement be set at 10 years—consisting of

---

[6] Pursuant to Penal Code section 1170.1, subdivision (a), "The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."

[7] The qualifying offenses are listed in section 707, subdivision (b) and, as relevant here, include "(25) [c]arjacking . . . while armed with a dangerous or deadly weapon."

[8] Defense counsel did not concede that offenses from prior petitions could be aggregated and instead urged the court to only aggregate offenses from the petition at issue in determining J.M.'s maximum period of confinement.

the upper term of nine years for the violation of Penal Code section 215, subdivision (a) and one-third the middle term of one year for the violation of Penal Code section 212.5, subdivision (c)—because it wanted the court to maintain jurisdiction over J.M. "until he's 25."[9]

The juvenile court agreed that "public safety requires that the Court be able to supervise [J.M.] up until the age of 25" and imposed a maximum term of confinement of nine years under section 731. The court accepted the probation department's calculation that J.M.'s maximum period of imprisonment for the aggregated offenses, including those in prior sustained petitions, was 46 years and 10 months with 909 days of credit.

The written commitment order reflects that the court imposed an aggregated maximum term of imprisonment based on Petition T, as well as 11 other sustained petitions. The commitment order also indicates that the carjacking conviction (count 1) is the principal offense with a maximum term, including enhancements, of 29 years.

### C. *The juvenile court did not err in imposing a nine year term of confinement*

On appeal, the parties agree that the juvenile court was required to impose the middle term of five years on the principal count of carjacking pursuant to section 731, subdivision (b). J.M. argues that the court must have ignored its statutory obligation and imposed the upper term of nine years because there is, in his estimation, "no other way" to reach a nine year commitment. We disagree.

At the dispositional hearing, the juvenile court expressly acknowledged that the recent amendments to section 731 required that it impose the middle term on the principal count.[10] However, the court also made clear that J.M. had other charges from prior sustained petitions as well as enhancements that would be aggregated into the

---

[9] J.M. confirmed that he was 16 years old at the time of the February 2021 dispositional hearing.

[10] The trial court's exact words were: "We understand that we have to impose the mid term [*sic*] for the leading violation."

8

dispositional order and asked whether anyone had calculated "the mid term [*sic*] plus aggregate [*sic*] one-third—the mid[dle] term of the other charges?" After confirming that its "interpretation" of the amendments to section 731 meant that it could "still aggregate one-third the mid[dle term] on the other aggregated offenses," the court aggregated the two current petitions (Petition T and S) along with multiple other sustained petitions in setting J.M.'s maximum period of imprisonment at 46 years 10 months. Because J.M. faced an aggregate sentence of more than seven years, the court exercised its discretion under section 607, subdivision (c) to impose a maximum term of confinement of nine years to ensure it retained jurisdiction over J.M. until he reached the age of 25.

Defense counsel, in the reply brief, suggests that aggregation of J.M.'s prior offenses was improper because he was not provided notice that such aggregation was under consideration. This is incorrect. "[A] petition under section 602 must contain notice of the intent to rely upon previous sustained petitions under section 602, in order to aggregate the maximum period of confinement on the basis of those petitions." (*In re Michael B*. (1980) 28 Cal.3d 548, 554.) Petition T contained such a notice of intent; it expressly stated that the district attorney intended "to move for an increase of the maximum term of confinement by aggregating the terms of all previously sustained petitions."

Furthermore, as detailed above, the parties and the juvenile court discussed the issue of aggregation at the disposition hearing, where defense counsel argued that the court should only aggregate the offenses alleged in Petition T. That discussion clearly demonstrates that the juvenile court was actively considering aggregating offenses from prior sustained petitions before it ultimately did so.

### D. *Request for supplemental briefing regarding the maximum period of imprisonment for count 1*

As noted above, the Attorney General argues that the juvenile court miscalculated the maximum period of imprisonment as to count 1 and that the correct term is 25 years

to life, plus a determinate term of five years. J.M. agrees that the term was miscalculated but argues that it should be a determinate term of 25 years, consisting of five years for carjacking and 20 years for the gang and firearm enhancements.

Upon reviewing the record, we observed that the indeterminate term of 25 years to life associated with the firearm enhancement allegations (Pen. Code, § 12022.53, subds. (d), (e)(1)) was neither listed in the waiver form nor discussed at the disposition hearing. We requested that the parties submit supplemental briefing addressing the following two questions: "1. Does the lack of advisement of this indeterminate term invalidate the minor's waiver and, if so, what is the appropriate disposition on appeal? 2. If the lack of advisement does not invalidate the waiver, should the matter be remanded to the juvenile court for it to exercise its discretion and either strike the firearm enhancement entirely or impose a lesser enhancement as discussed in *People v. Tirado* (2022) 12 Cal.5th 688, 699?"

In response to the first question, J.M. argues that the failure to advise him of the indeterminate term was prejudicial as it is not "reasonably probable" that he would have admitted the firearm enhancement allegations had he known that it would subject him to a term of 25 years to life. The Attorney General counters that, while there was no advisement of the indeterminate term, the error was either waived or it was harmless. We agree with the Attorney General that any error in advisement was waived by failure to object below. Assuming it was not waived, however, any error was harmless.

On the second question, J.M. responds that, if the lack of advisement does not invalidate his waiver, the matter must be remanded for the juvenile court to exercise its discretion and strike the enhancement or impose a lesser statutory enhancement. The Attorney General concedes that remand on this issue is appropriate. On this issue, we agree with the parties that the matter must be remanded for the juvenile court to exercise its discretion regarding the firearm enhancement pursuant to Penal Code section 12022.53, subdivision (h).

10

### 1. *Applicable sentence enhancements*

Under Penal Code section 186.22, subdivision (b)(1)(C), a person who commits a violent felony for the benefit of a criminal street gang is subject to a sentence enhancement of 10 years.[11]  In addition, a person who is a principal in committing a felony for the benefit of a criminal street gang where, during the commission of that felony, another principal in the offense discharges a firearm causing great bodily injury, "shall be punished by an additional and consecutive term of imprisonment . . . for 25 years to life."  (Pen. Code, § 12022.53, subds. (d), (e).)

Where the defendant is subject to both of the above enhancements, however, the court shall only impose the enhancement that provides for the longer sentence.  (Pen. Code, § 12022.53, subds. (e)(2), (j).)

### 2. *Dispositional hearing and order*

There was no specific discussion at the dispositional hearing about the appropriate maximum term of imprisonment for count 1.  The dispositional order indicates that the maximum term of imprisonment for count 1 is 29 years, but the record does not reflect how the juvenile court arrived at this number.  However, J.M. admitted to carjacking and further admitted that:  (1) he committed the carjacking for the benefit of a criminal street gang; (2) he was a principal in the carjacking; and (3) another principal in the carjacking personally discharged a firearm causing great bodily injury.  Having admitted these allegations, J.M. was subject to an indeterminate term of 25 years to life in addition to a

---

[11] The Attorney General also argues that "[Penal Code] [s]ection 186.22, [subdivision] (b)(4)(B) requries [*sic*] that a defendant convicted of an enumerated offense, including carjacking, and found to have committed the gang benefit enhancement be sentenced to an indeterminate term of life imprisonment with a minimum term of 15 years."  As J.M. correctly notes in his reply brief, Petition T does not include an allegation that he was in violation of this statute.  Accordingly, that enhancement, which was neither pleaded nor proved, cannot be imposed.  (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 483.)

middle determinate term of five years for the carjacking itself. (Pen. Code, §§ 12022.53, subds. (d), (e)(1), 215, subd. (a).)

### 3. Failure to advise on penal consequences

Before accepting a plea, the court must advise the accused of the direct consequences of such a plea, including "the permissible range of punishment provided by statute." (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605; *People v. Gurule* (2002) 28 Cal.4th 557, 634.) However, "[u]nlike the admonition of constitutional rights . . . advisement as to the consequences of a plea is not constitutionally mandated. Rather, the rule compelling such advisement is 'a judicially declared rule of criminal procedure.' " (*People v. Walker* (1991) 54 Cal.3d 1013, 1022, disapproved on another ground in *People v. Villalobos* (2012) 54 Cal.4th 177, 183.) "[W]hen the only error is a failure to advise of the consequences of the plea, the error is waived if not raised at or before sentencing." (*Walker*, *supra*, at p. 1023, disapproved on another ground in *Villalobos*, *supra*, at p. 183.) Where the error is not waived, however, " '[a] trial court's failure to comply with this judicial rule of criminal procedure requires reversal only if it is reasonably probable a result more favorable to the defendant would have been reached if he had been properly advised.' " (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 196.)

In this case, J.M. did not alert the juvenile court at or before disposition that he had not been advised that admission of the firearm enhancement allegations set forth in connection with count 1 (Pen. Code, § 12022.53, subds. (d), (e)(1)) could result in the imposition of an indeterminate term of 25 years to life. Accordingly, the error was waived.

However, even if the error had been raised, it is not reasonably probable that J.M. would have obtained a more favorable result had he been advised of the indeterminate term. At the jurisdiction hearing, the juvenile court advised J.M. that he was facing "a total maximum custody time of 23 years and 2 months" if he admitted the allegations in

Petitions S and T. Immediately thereafter, the court said that this was "the worst-case scenario, and actually that's not going to happen." While there is a qualitative difference between a term of 23 years two months and a term of 25 years to life, both terms are lengthy, and thus J.M. knew he faced a significant term of commitment. Given the dismissal of three additional robbery charges, as well as the court's indication that the "worst-case scenario" would not come to pass, it is not reasonably likely that J.M. would not have proceeded with the waiver and admission of the allegations.

### 4. Remand is necessary

"[Penal Code] [s]ection 12022.53 sets forth the following escalating additional and consecutive penalties, beyond that imposed for the substantive crime, for use of a firearm in the commission of specified felonies . . . : a 10-year prison term for personal use of a firearm, even if the weapon is not operable or loaded (*id*., subd. (b)); a 20-year term if the defendant 'personally and intentionally discharges a firearm' (*id*., subd. (c)); and a 25-year-to-life term if the intentional discharge of the firearm causes 'great bodily injury' or 'death, to any person other than an accomplice' (*id*., subd. (d))." (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1124.)

Effective January 1, 2018, Senate Bill No. 620 (2017-2018 Reg. Sess.) amended Penal Code section 12022.53, subdivision (h) to give trial courts discretion to strike or dismiss a section 12022.53 firearm enhancement at sentencing in the interests of justice. (Stats. 2017, ch. 682, § 2.) Prior to the amendment, imposition of the enhancement was mandatory. (See former § 12022.53, subd. (h); Stats. 2010, ch. 711, § 5.) We agree with the parties that as an ameliorative change to the law, the amendment to section 12022.53 applies retroactively to cases that are not yet final on appeal. (See *People v. Woods* (2018) 19 Cal.App.5th 1080, 1090-1091.)

After the amendment to Penal Code section 12022.53, subdivision (h), *People v. Morrison* (2019) 34 Cal.App.5th 217, 223 held that trial courts have "discretion to impose an enhancement under section 12022.53, subdivision (b) or (c) as a middle

13

ground to a lifetime enhancement under section 12022.53, subdivision (d), if such an outcome [is] found to be in the interests of justice under [Penal Code] section 1385." A split developed in the Courts of Appeal regarding whether a trial court had the discretion to impose a lesser uncharged section 12022.53 enhancement.

In *Tirado*, *supra*, 12 Cal.5th at page 697, the California Supreme Court recently concluded that *Morrison* "correctly described the scope of a trial court's sentencing discretion under [Penal Code] section 12022.53." *Tirado* determined that the "statutory framework" of section 12022.53, as amended by Senate Bill No. 620, "permits a court to strike the section 12022.53[, subdivision] (d) enhancement found true by the [trier of fact] and to impose a lesser uncharged statutory enhancement instead." (*Tirado*, *supra*, at p. 692.) "When an accusatory pleading alleges and the [trier of fact] finds true the facts supporting a section 12022.53[, subdivision] (d) enhancement, and the court determines that the section 12022.53[, subdivision] (d) enhancement should be struck or dismissed under section 12022.53[, subdivision] (h), the court may, under section 12022.53[, subdivision] (j), impose an enhancement under section 12022.53[, subdivision] (b) or (c)." (*Id*. at p. 700.) "[T]he Legislature has permitted courts to impose the penalties under section 12022.53[, subdivision] (b), (c), or (d) so long as the existence of facts required by the relevant subdivision has been alleged and found true." (*Id*. at p. 702.)

Accordingly, we will remand the matter to give the juvenile court an opportunity to exercise its discretion to strike the Penal Code section 12022.53, subdivision (d) firearm enhancement or to impose a lesser applicable enhancement under Penal Code section 12022.53. We express no opinion on how the juvenile court should exercise its discretion on remand.[12]

---

[12] As the Attorney General points out, the commitment order erroneously lists count 3 under Petition S rather than Petition T. The new commitment order should reflect that Petition S consists of a single offense of attempted residential burglary (Pen. Code, §§ 664, 460, subd. (a)) and indicate that the sustained robbery offense (Pen. Code, § 212.5, subd. (c); count 3) is within Petition T.

## III.    DISPOSITION

The commitment order is reversed.  The matter is remanded for the juvenile court to enter a new commitment order setting forth the maximum term of commitment and maximum period of imprisonment after exercising its discretion regarding the firearm enhancement (Pen. Code, § 12022.53, subd. (d)) pursuant to Penal Code section 12022.53, subdivision (h).  The juvenile court shall also ensure that the new commitment order accurately attributes the sustained offenses to the corresponding petitions.

_____
                Wilson, J.

WE CONCUR:

_____
      Bamattre-Manoukian, Acting P.J.

_____
            Danner, J.

People v. J.M.
H048921